UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GARY JOHNSON and JOHNSON          )
COMPANY, INC.,                    )
                                  )
             Plaintiffs,          )
                                  )
       v.                         )
                                  )
DANIEL LYON, LEE SPINO, ASSURANCE )   CASE NO. 1:06-cv-1289-DFH-TAB
AGENCY, LTD, and DENNIS LYON a/k/a )
Dan Lyon, Dennis Robert Lyon, Dennis J. )
Lyon, R. Dennis Hanson, R. Hanson, )
Robert Hanson, Dennis R. Lyon and Joe )
Lyon,                             )
                                  )
             Defendants.          )

ENTRY ON PENDING MOTIONS

Plaintiffs Gary Johnson and Johnson Company have sued the defendants
for claims arising out of Johnson Company's failed bids for two Indiana
Department of Transportation (INDOT) competitive bidding contracts.  Plaintiffs
allege that when defendants Lee Spino and Assurance Agency directed them to
defendants Daniel and Dennis Lyon for bonds to support Johnson Company's
INDOT bids, Spino and Assurance Agency were negligent, breached a contract,
committed fraud, and violated Indiana insurance and consumer protection laws.
Plaintiffs claim that the bonds provided by the Lyons were inadequate and caused
them to lose out in the bidding process.  Plaintiffs have sued the Lyons for breach
of contract and misrepresentation, and they have sued Daniel Lyon for deceptive

practices.  Plaintiffs have filed a motion for default judgment against Daniel and Dennis Lyon.  Dennis Lyon has filed a motion to dismiss or, in the alternative, a motion for summary judgment.  Spino and Assurance Agency have filed a motion for summary judgment.  The court has jurisdiction under 28 U.S.C. § 1332.  As explained below, the court denies the plaintiffs' motion for default judgment, denies Dennis Lyon's motion to dismiss and motion for summary judgment, and grants in part and denies in part Spino's and Assurance Agency's motion for summary judgment.

I.      *Motion for Default Judgment*

Plaintiffs ask the court to enter a default judgment against Daniel Lyon and Dennis Lyon ("Lyon defendants").  Because of the extraordinary nature of this remedy, the court denies the motion.

Plaintiffs  filed their complaint on August 26, 2006.  The Lyon defendants, acting *pro se*, filed separate motions to dismiss for lack of personal jurisdiction. Before the court ruled on the motions to dismiss, plaintiffs filed a second amended complaint on October 25, 2007.  The court denied the Lyon defendants' motions on November 5, 2007 and ordered all defendants to answer or otherwise respond to the second amended complaint by November 30, 2007.  Dkt. No. 53.  The Lyon defendants did not respond by November 30th.  On March 18, 2008, plaintiffs filed their motion for default judgment as to the Lyon defendants.  Dkt. No. 58. On March 28, 2008, the court ordered the Lyon defendants to show cause why the

motion for default judgment should not be granted by April 9, 2008.  Dkt. No. 59.
The Lyon defendants both filed answers on April 14, 2008 but did not address the
default judgment issue.  Dkt. Nos. 64, 65.  On April 21, 2008, the court again
issued an order giving the Lyon defendants ten days to show cause why default
should not be entered.  Dkt. No. 69.  The Lyon defendants jointly filed a response
to the order to show cause on May 2, 2008.  Dkt. No. 78.  The response claimed
that they had intended their Answers to respond to the court's order to show
cause and that the plaintiffs had not been prejudiced by the delay in answering.
On May 2nd, Dennis Lyon also filed his motion to dismiss or in the alternative a
motion for summary judgment.  Dkt. No. 76.  Also on May 2nd, attorney Curtis
Lombardi filed a motion to appear *pro hac vice* to represent the Lyon defendants.
Dkt. Nos. 73, 92.

The entry of default judgment is a two step process.  First, the clerk must
enter a party's default.  Fed. R. Civ. P. 55(a).  Second, the clerk or the court may
enter a default judgment against a party.  Fed. R. Civ. P. 55(b).  No default has
been entered in this case.  The Seventh Circuit "has a well established policy
favoring a trial on the merits over a default judgment."  *Sun v. Board of Trustees
of University of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007).  Default judgment
should be reserved for situations where "a party wilfully disregards pending
litigation."  *Id.*

The Lyon defendants have been unresponsive at times in this litigation, but they have not willfully disregarded it.  In August 2007, each defendant filed a motion to dismiss.  Dkt. Nos. 36, 42.  Additionally, they each filed an Answer on April 14, 2008.  They responded to the court's second order to show cause on May 2, 2008, and they formally obtained counsel on the same date.  The record suggests that the Lyon defendants were delinquent in much of their actions while they were acting *pro se*, but they have now obtained counsel, have attempted to explain their delinquency, and have attempted to defend on the merits.  Under these circumstances, the court declines to enter a default judgment.

II.     *Dennis Lyon's Motion to Dismiss or for Summary Judgment*

Dennis Lyon has moved to dismiss the claims against him or for summary judgment in his favor because he claims the plaintiffs were confused and improperly identified him as a defendant in the complaint.  Dkt. No. 76.  In support of his motions, he has submitted an affidavit swearing that he has never spoken with the plaintiffs concerning any bonding.  The court denies both dismissal and summary judgment.

Dennis Lyon offers no brief in support of his motion to dismiss.  His argument that plaintiffs were confused and improperly added him as a defendant is a factual argument.  Factual disputes cannot be resolved in a motion to dismiss.  The complaint contains several paragraphs alleging that Dennis Lyon dealt with the plaintiffs about bonding.  See Sec. Am. Compl. ¶¶ 16-18, 71.  At a

future stage, Dennis Lyon may be able to show that the plaintiffs improperly identified him as a party, but he cannot make that showing at the pleading stage when the complaint contains allegations that he was a party to the allegedly wrongful acts.

In the alternative, Dennis Lyon requests summary judgment in his favor, supported by his affidavit claiming that he never spoke with the plaintiffs about bonding.  In response, the plaintiffs submitted an affidavit from plaintiff Gary Johnson claiming that he spoke with an individual identified as Dennis Lyon about bonding.  Dkt. No. 89, Ex. A.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), quoting Fed. R. Civ. P. 56(e) Advisory Committee's Note to 1963 Amendment.  Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the

record in the light reasonably most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A material fact is in dispute in this case: whether Dennis Lyon had any interactions with the plaintiffs about the bonding that gave rise to this lawsuit. Plaintiffs contend that such conversations did take place. Dennis Lyon contends that they did not take place. At the summary judgment stage, the court views the evidence in the light reasonably most favorable to the plaintiffs, so the motion for summary judgment must be denied.

III.     *The Assurance Defendants' Motion for Summary Judgment*

Defendants Lee Spino and Assurance Agency ("Assurance defendants") move for summary judgment on each of the counts against them. The court denies summary judgment as it pertains to the breach of contract claim, the claim based on Indiana Code § 27-1-15.6-13, and an amended claim based on Indiana Code § 24-5-0.5, and the court grants summary judgment on the remaining claims.

A.     *Undisputed Facts*

The following facts are undisputed for purposes of the motion for summary judgment. Plaintiff Gary Johnson was the sole owner, director, officer, and manager of plaintiff Johnson Company. Sec. Am. Compl. ¶ 12. Johnson

Company regularly bid on government contracts that required the company to provide surety bonds.  Johnson Dep. 29.  State government contracts generally require bond-providing surety companies to be listed on the federally-maintained "T List."  Spino Dep. 50.  Defendant Lee Spino owned American Bonding, which provided bonding to Johnson Company for government contracts.  Spino Dep. 28-29; Johnson Dep. 30-32.  Johnson Company began doing business with American Bonding in 2003.  Johnson Dep. 26-27.  Most of Gary Johnson's interactions with American Bonding were through American Bonding's employee, Paul Johnson, not Lee Spino.  Johnson Dep. 31.  Paul Johnson was the American Bonding employee who originally solicited Johnson Company's business.  Johnson Dep. 32.  Spino, however, signed the bonds that American Bonding issued to Johnson Company because Paul Johnson did not have authority to sign the bonds.  Spino Dep. 36-37.  American Bonding was eventually purchased by Assurance Agency.  Spino Dep. 60-61.  Gary Johnson contacted Spino for the first time to talk about the Assurance acquisition, and Gary Johnson testified that Spino assured him that Assurance would continue to take care of Johnson Company's bonding needs.  Johnson Dep. 33, 48.

In October 2004, Gary Johnson contacted Spino about future bonding.  Spino Dep. 70.  Spino informed Gary Johnson that Johnson Company would have to give all of its insurance business to Assurance in order for Assurance to continue to provide bonding to Johnson Company in the long term.  Johnson Dep. 68.  Gary Johnson could not comply with this request.  Johnson Dep. 70.  Spino

then said that he would look for another bonding company for Johnson Company. Johnson Dep. 70-71.  Gary Johnson was unhappy that Spino could not fulfill all of Johnson Company's bonding needs, and he told Spino that Johnson Company had five upcoming bids requiring bonds.  Johnson Dep. 56.  Gary Johnson testifies that Spino assured him that he would supply a bonding agency for Johnson Company that would be able to fulfill all of Johnson Company's INDOT and federal bonding needs.  Johnson Dep. 71.  Spino spoke with Global Construction Services about providing bonding for Johnson Company.  Spino Dep. 76-77.  Spino discovered Global through marketing materials.  Spino Dep. 79. There is no indication that Spino or Assurance had any past relationship with Global or its apparent owner, Daniel Lyon.  Global required a $1,000 application fee, which Assurance paid to Global.  Spino Dep. 77-78.  Johnson Company later paid $1,000 to Assurance.  Spino Dep. 78; Carson Dec. 3.

On October 26, 2004, Spino sent a fax to Johnson Company indicating that Spino had directed Global to submit a bond for Johnson Company.  Carson Dec. 2.  On October 27, Johnson Company received two faxes from "D. Lyon" concerning bonds.  *Id.*  Gary Johnson called Daniel Lyon.  Daniel Lyon said that Spino had directed him to take care of Johnson Company's bonding needs. Johnson Dep. 74-75.  Gary Johnson understood Daniel Lyon and Global to be one and the same.  Johnson Dep. 83-84.  Daniel Lyon also told Gary Johnson that Global could handle Johnson Company's bonding needs.  Johnson Dep. 84-85. Gary Johnson did not research Global's ability to provide bonds.  Johnson Dep.

91.   Gary Johnson did provide Daniel Lyon with INDOT's performance bid requirements.  Johnson Dep. 87-88.  In February 2005, Gary Johnson prepared bids for two INDOT projects.   Johnson Dep. 102-03.   Johnson Company submitted bonds prepared by Daniel Lyon with the bids.   Johnson Dep. 103. Johnson Company was the low bidder on the projects, but INDOT rejected its bids because the bonds prepared by Lyon were inadequate.   *Id.*   Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

B.   *Breach of Contract*

Plaintiffs claim that they contracted with Spino, as an agent of Assurance, to place the plaintiffs with "an alternative bonding agent who could provide comparable bonding services that Spino had provided [Gary] Johnson and Johnson Company in the past . . . ."  Sec. Am. Compl. ¶ 25.  Plaintiffs point to the $1,000 check that Johnson Company gave Assurance as evidence of this contract and as the consideration for the contract.   The Assurance defendants argue that the parties did not enter into a contract because there was no consideration or offer and acceptance.   The court denies the defendants' motion for summary judgment on this count.

1.   *Consideration*

The Assurance defendants argue that the $1,000 check that Johnson Company gave to Assurance was not consideration for the contract.   They claim

that the check did not benefit them because it was merely a reimbursement for the $1,000 that Assurance had previously given to Global. The Assurance defendants incorrectly characterize the consideration requirement.

Consideration consists of any bargained-for exchange. *B-Dry Owners Ass'n v. B-Dry System, Inc.*, 636 N.E.2d 161, 163 (Ind. App. 1994). The consideration requirement is satisfied if there is "a benefit accruing to the promisor or a detriment to the promisee." *Id.* "A detriment occurs when the promise[e] forbears a legal right, and a benefit results when the [promisor] receives a legal right to which he would not otherwise be entitled." *Hastetter v. Fetter Properties, LLC*, 873 N.E.2d 679, 684 (Ind. App. 2007).

When the Johnson Company gave $1,000 to Spino, it suffered a detriment, and Assurance gained a benefit. Johnson Company had no pre-existing obligation to pay $1,000 to Assurance. Assurance chose to pay $1,000 to Global, and the plaintiffs were not a party to that agreement. Johnson Company's check was legally independent of that agreement. For purposes of summary judgment, the check was consideration sufficient to support the formation of a contract for Spino to provide Johnson Company with an adequate bonding agency.

2.      *Offer and Acceptance*

The Assurance defendants also argue that there was no offer and acceptance for a contract for Spino or Assurance to provide bonds to Johnson

Company.  Def. Br. 7.  As plaintiffs point out, the contract that they allege in the complaint is not a contract to provide bonds but a contract to broker for Johnson Company a relationship with another bonding agent capable of providing bonds for state and federal contracts.  Sec. Am. Compl. ¶ 25.  Plaintiffs point to Gary Johnson's account of his conversation with Spino:  "he said, Yes, Assurance may write some of your bonds, but I'm going to put you with somebody else.  But it's going to cost you $1,000 to do this. . . . I will probably set you up with somebody that may write some of those [bonds] that handle smaller companies."  Johnson Dep. 71.  Viewed in the light reasonably most favorable to plaintiffs, this evidence would allow a reasonable to jury to find that there was an offer and acceptance for the agreement that Spino and Assurance would place Johnson Company with a bonding agent who could provide adequate bonding services.  Defendants are not entitled to summary judgment on this claim.[1]

C.    *Negligence*

The plaintiffs claim that the Assurance defendants undertook an obligation to provide Johnson Company with a "bonding agent who could provide bonding

---

[1]In their reply brief, the Assurance defendants raise a new argument.  They argue that there was no breach of contract because, while plaintiffs may be able to show that INDOT rejected Global's two bonds, plaintiffs have not shown that Global was *unable* to comply with state and federal bonding requirements.  Reply Br. 3.  It would be unfair to consider this new legal theory because plaintiffs have had no opportunity to respond to it.  See *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989), superseded on other grounds by statute ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B – a ground the movant might have presented but did not.").

services comparable to what Spino had previously provided Johnson Company .

. . .” Sec. Am. Compl. ¶ 31.  The plaintiffs argue that the Assurance defendants

breached this duty by placing Johnson Company with the Lyon Defendants, who

were not capable of writing acceptable bonds.  The court finds that the Assurance

defendants breached no duty independent of any contractual duty.[2]

In their response brief, plaintiffs assert that Spino breached the duty that

insurance agents have to advise their clients by directing the plaintiffs to the

Lyons, who were unable to provide adequate bonds.  An insurance agent has a

duty to advise a client only if the agent has a “special relationship” with the client.

*Filip v. Block*, 879 N.E.2d 1076, 1085 (Ind. 2008), citing *Craven v. State Farm*

*Mutual Auto. Ins. Co.*, 588 N.E.2d 1294, 1297 n.5 (Ind. App. 1992).  “Something

more than the standard insured-insurer relationship is required in order to create

a special relationship obligating the insurer to advise the” insured.  *Craven*, 588

N.E.2d at 1297, quoting *Nelson v. Davidson*, 456 N.W.2d 343, 347 (Wis. 1990).

Indiana courts consider the length of the insured-insurer relationship, but they

focus on the relationship’s nature when determining whether a special

relationship exists.  See *Billboards ‘N’ Motion, Inc. v. Saunders-Saunders &*

*Assocs., Inc.*, 879 N.E.2d 1135, 1142 (Ind. App. 2008); *American Family Mutual*

---

[2]While the negligence count, Count II, identifies Spino and Assurance as
defendants, the parties’ briefs address only Spino’s alleged negligence.  Because
the second amended complaint suggests that Assurance’s liability is based on
Spino’s alleged negligence, the court’s discussion, like the parties’ briefs, focuses
on Spino.

*Ins. Co. v. Dye*, 634 N.E.2d 844, 848 (Ind. App. 1994).  The following actions by an insurance agent suggest a special relationship:

> (1) exercising broad discretion to service the insured's needs;
> (2) counseling the insured concerning specialized insurance coverage;
> (3) holding oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and
> (4) receiving compensation, above the customary premium paid, for the expert advice provided.

*American Family*, 634 N.E.2d at 848.

Even construing the facts in the light reasonably most favorable to the plaintiffs, there was no "special relationship" between Spino and the plaintiffs. Gary Johnson originally had dealt with Paul Johnson of American Bonding.  Spino had signed as power of attorney for a surety company on some of the bonds that American Bonding had provided to Johnson Company.  Spino Dep. 37.  After American Bonding merged with Assurance, Spino told Gary Johnson that Assurance would "take care of your bonding needs just like we always have." Johnson Dep. 48.  In October 2004, Patricia Carson of Johnson Company signed a letter recognizing Spino as Johnson Company's "broker of record."  Carson Dec. 1-2.  Spino and Gary Johnson continued to speak occasionally, and Spino requested that Johnson Company give all of its insurance business to Assurance. When Gary Johnson told Spino that this was not possible, Spino said he would find another company to take care of Johnson Company's bonding needs. Johnson Company also paid $1,000 to Assurance.

This evidence does not show "any special relationship over and above the typical insured-insurer relationship." See *Dye*, 634 N.E.2d at 848. Spino did have broad discretion to choose a provider for Johnson Company's bonding needs. However, the rest of the facts suggest no special relationship. Spino and the plaintiffs' relationship existed over a fairly short period of time. Spino did not counsel Gary Johnson about Johnson Company's insurance needs. The record shows that their interactions were limited. Spino told Gary Johnson that he would find an adequate bonding company, but he never held himself out as more of an expert than a typical insurance agent. Finally, while the $1,000 reimbursement check was consideration for contract purposes, the court would have to stretch to call it "compensation" sufficient to support a "special relationship" imposing duties under tort law. There is no evidence that it is more than the customary amount paid to place a customer with another agency. At most, the plaintiffs and Spino had a typical insurer-insured relationship, which does not give rise to the special duty to advise. Any duty created by the insurer-insured relationship is limited to the contractual relationship discussed above.

D.    *Constructive Fraud*

The plaintiffs claim that Spino committed constructive fraud by misrepresenting that the Lyon defendants could provide adequate bonds to Johnson Company. In their briefs, the parties agree that the issue is whether Spino committed constructive, not actual, fraud. The undisputed facts show that Spino did not commit constructive fraud.

Under Indiana law, constructive fraud can arise by operation of law when one party would otherwise obtain an unconscionable advantage over another. *Allison v. Union Hospital, Inc.*, 883 N.E.2d 113, 122 (Ind. App. 2008).  Unlike actual fraud, there is no intent requirement.  *Id.*  The elements of constructive fraud are:  (1) a duty existing by virtue of the relationship between the parties; (2) a violation of that duty by making deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result of the reliance; and (5) an advantage by the party to be charged at the expense of the complaining party.  *Id.* at 123.[3]

To show the existence of a relationship that can support a claim for constructive fraud, the plaintiff generally must show a fiduciary or fiduciary-like relationship between the parties.  *Cash in a Flash, Inc. v. McCullough*, 853 N.E.2d 533, 538 (Ind. App. 2006).[4]  For a fiduciary relationship to exist, Gary Johnson must have placed confidence in Spino and Johnson must have been "in a position

---

[3]Also unlike actual fraud in Indiana, a promise about future conduct can give rise to a claim for constructive fraud.  *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 281 (Ind. App. 2005).

[4]The plaintiff can also demonstrate a close relationship by showing that one party is a buyer and the other a seller and the seller possesses more information than and is in a superior position to the buyer.  *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. App. 2002).  This type of relationship was not present in this case.  Additionally, a party may not rely on a contract to create a duty that, if breached, would form the basis of a constructive fraud claim.  *Allison*, 883 N.E.2d at 123, citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. App. 2000) (affirming dismissal under Indiana Trial Rule 12(B)(6) where parties' contract established an ordinary arms-length relationship).

of inequality, dependence, weakness or lack of knowledge." *Heaton & Eadie Professional Servs. Corp. v. Corneal Consultants of Indiana, P.C.*, 841 N.E.2d 1181, 1189 (Ind. App. 2006).

The undisputed facts show that Spino did not commit constructive fraud on Gary Johnson.  First, a reasonable jury could not find that a fiduciary relationship existed between Spino and Gary Johnson.  While the court gives Gary Johnson the benefit of the doubt and assumes that he relied on Spino to direct him to a bonding company, Johnson was not in a position of weakness compared to Spino.  Gary Johnson may have had less knowledge about bonding companies than Spino, but he was able to obtain knowledge about bonding companies.  He certainly had entered into no formal relationships requiring him to depend on Spino for knowledge of bonding companies.   Second, Spino gained no unconscionable advantage from Gary Johnson.  Johnson Company gave $1,000 to Assurance, the same amount that Assurance paid to Global.  While this may be a benefit to Spino, a jury could not find it was unconscionable under these circumstances.

E.    *Violation of Insurance and Consumer Protection Laws*

The final count against Spino and Assurance alleges that they aided and abetted the Lyon defendants' sale of inadequate bonds to Johnson Company in violation of Indiana Code §§ 25-5-0.5-2 and 27-4-1-4.  The count also alleges that

Spino and Assurance violated Indiana Code § 27-1-15.6-13 by paying $1,000 to Global.

Indiana Code § 27-4-1-4 cannot be enforced through a private action. Article 4 of Title 27 is an unfair competition article, and the plaintiffs cite the section that enumerates various types of unfair methods of competition.   Ind. Code § 27-4-1-4.   However, a later section provides that the article "does not create a cause of action other than an action by: (1) the commissioner to enforce his order; or (2) a person . . . to appeal an order of the commissioner."  Ind. Code § 27-4-1-18; accord, *Neurological Resources, P.C. v. Anthem Ins. Cos.*, 61 F. Supp. 2d 840, 847 (S.D. Ind. 1999) (section 27-4-1-18 precludes private right of action).

Indiana Code § 25-5-0.5-2 does not exist.  In their response brief, plaintiffs rely on section 24-5-0.5-2 rather than section 25-5-0.5-2.  Response Br. 17-18. A response brief is not a proper method to amend a pleading; a simple Rule 15 amendment will do the trick.  The court suggests that the plaintiffs seek a Rule 15 amendment.  For efficiency, the court will discuss whether to grant summary judgment for defendants on a claim under Indiana Code § 24-5-0.5-1 *et seq.*, the Deceptive Consumer Sales chapter of the Indiana Code.

The Assurance defendants argue that they did not aid and abet the Lyon defendants in violating the Deceptive Consumer Sales chapter because section 24-5-0.5-3 requires that the supplier of a service make a representation about a

transaction that he "knows or should reasonably know" to be false.    The Assurance defendants claim that the plaintiffs have not shown that the Lyon defendants were unable to provide acceptable INDOT bonds; rather, the Assurance defendants claim that the plaintiffs have only shown that the Lyon defendants' bonds were rejected in this case.   To the contrary, the plaintiffs have submitted evidence sufficient to raise a genuine issue of material fact as to whether the Lyon defendants were able to provide acceptable INDOT bonds.   See Cavosie Dec. 1-2. If the plaintiffs amend their complaint to add a claim under the Deceptive Consumer Sales chapter, summary judgment will not be appropriate for that claim.

Defendants argue that plaintiffs also cannot enforce section 27-1-15.6-13 through a private action because the statute is intended to be enforced administratively.[5]   Defendants point to section 27-1-15.6-12, which permits the

---

[5]Indiana Code § 27-1-15.6-13 reads:

(a) An insurance company or insurance producer shall not pay a commission, service fee, brokerage fee, or other valuable consideration to a person for selling, soliciting, or negotiating insurance in Indiana if the person is required to be licensed under this chapter and is not licensed.

(b) A person shall not accept a commission, service fee, brokerage fee, or other valuable consideration for selling, soliciting, or negotiating insurance in Indiana if the person is required to be licensed under this chapter and is not licensed.

(c) Renewal commissions or other deferred commissions may be paid to a person for selling, soliciting, or negotiating insurance in Indiana if the person was required to be licensed under this chapter and was licensed at the time of the sale, solicitation, or negotiation.

(continued...)

Commissioner of Insurance to issue sanctions for certain violations.  Specifically, the Commissioner can issue sanctions for the violation of insurance law or regulations.  Ind. Code § 27-1-15.6-12(b)(2)(A), (B).  Indiana courts have not determined the effect of this section.

Indiana courts will not find that a statute creates a private right of action if the statute contains "a comprehensive enforcement mechanism."  *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000).  When it is unclear whether an administrative agency has the authority to enforce a specific statutory provision, a private right of action can be found.  See *Galloway v. Hadley*, 881 N.E.2d 667, 673-74 (Ind. App. 2008).

The "enforcement mechanism" in section 27-1-15.6-12 is not specific enough to foreclose the possibility that section 27-1-15.6-13 supports a private right of action.  Section 12 permits the Commissioner of Insurance to levy fines and other penalties for insurance producers who do not comply with insurance law.  However, section 12 does not suggest that the Commissioner of Insurance's powers are comprehensive enough to preclude a private right of action in section 13.  Section 12 specifically gives the Commissioner power to enforce violations of section 31 of the Chapter, but it does not list section 13.  Additionally, section 12

---

[5](…continued)
(d) An insurer or insurance producer may pay or assign commissions, service fees, brokerage fees, or other valuable consideration to an insurance agency or to a person who does not sell, solicit, or negotiate insurance in Indiana, unless the payment would violate IC 27-1-20-30.

does not specifically give the Commissioner authority to enforce section 13 by regulation. At this stage, without further information about how the Commissioner enforces sections 12 and 13, the court does not find that section 12 precludes the plaintiffs from basing a private right of action on section 13.[6]

## Conclusion

For the foregoing reasons, plaintiffs' motion for default judgment as to Daniel Lyon and Dennis Lyon (Dkt. No. 58) is denied. Dennis Lyon's motion to dismiss or for summary judgment (Dkt. No. 76) is also denied. The Assurance defendants' motion for summary judgment (Dkt. No. 85) is granted as it pertains to the negligence claim, the fraud claim, and the claim based on Indiana Code § 27-4-1-4. The motion is denied as it pertains to the breach of contract claim, the claim based on Indiana Code § 27-1-15.6-13, and the motion is also denied as it pertains to an amended claim under Indiana Code § 24-5-0.5-1 *et seq.*

So ordered.

Date: December 24, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[6]In finding that section 12 does not preclude section 13 from creating a private right of action, the court does not decide whether section 13 in fact creates a private right of action. The court addresses only the narrow issue raised by the defendant.

Copies to:

Henry J. Price
PRICE WAICUKAUSKI & RILEY
hprice@price-law.com

Robert David Eaglesfield III
PRICE WAICUKAUSKI & RILEY
deaglesfield@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Curtis J. Lombardi
curtisjlombardi@msn.com

James L. Culp
KIGHTLINGER & GRAY
jculp@k-glaw.com

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com